UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BILLY FORD, | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| vs. | ) Case No. 4:18-CV-1436-ACL |
|  | ) |
| MICHELLE BUCKNER and | ) |
| ERIC SCHMITT,[1] | ) |
|  | ) |
| Respondents. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Billy Ford for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### I. Procedural History

Ford is currently incarcerated at the South Central Correctional Center in Licking, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis City, Missouri. (Doc. 11-2 at pp. 64-68).

On February 16, 2011, a jury found Ford guilty of one count of first-degree murder, one count of armed criminal action, one count of first-degree assault, and one count of armed criminal action. *Id.* at 56-59. The court sentenced Ford to life without the possibility of parole for the murder count, and consecutive life sentences on the remaining counts. *Id.* at 64-68.

---

[1]The Court substitutes Michelle Buckner, the present Warden of South Central Correctional Center ("SCCC") where Petitioner is currently in custody, for Jeff Norman, who was the Warden of SCCC and identified as the Respondent at the time Petitioner filed this habeas proceeding. Fed. R. Civ. P. 25(d). Additionally, the Court adds as a respondent Eric Schmitt, the Missouri Attorney General, because Petitioner is challenging a sentence to be served in the future. Rule 2b of the Rules Governing § 2254 Cases in the United States District Courts.

1

In his single claim on direct appeal of his convictions, Ford argued that the trial court erred in overruling Ford's objection under *Batson v. Kentucky*, 476 U.S. 79 (1986) (hereinafter "*Batson*") to the State's peremptory strike of African-American venireperson T.L.  (Doc. 11-3.) On March 20, 2012, the Missouri Court of Appeals affirmed Ford's convictions.  (Doc. 11-5.)

Ford filed a *pro se* motion for post-conviction relief under Rule 29.15.  (Doc. 11-6 at pp. 6-10.)  After appointment of counsel, an amended post-conviction relief motion was filed. *Id.* at 16-43.  In his amended motion, Ford raised the following ineffective assistance of counsel claims: (1) trial counsel was ineffective for failing to raise the three-year statute of limitations for the assault and armed criminal action charges; (2) trial counsel was ineffective for not making an opening statement; and (3) trial counsel was ineffective for failing to object to statements made by the prosecutor during her closing argument.  The court set aside Ford's convictions for assault and armed criminal action, but upheld his conviction and sentence for the murder count.  *Id.*

In his appeal, Ford argued that the motion court erred in denying relief with respect to the first-degree murder conviction, because trial counsel was ineffective for failing to object to a portion of the prosecutor's rebuttal closing argument.  (Doc. 11-9 at p. 18.)  On December 12, 2017, the Missouri Court of Appeals affirmed the decision of the motion court.  (Doc. 11-11.)

Ford filed the instant Petition on August 27, 2018, in which he raises the following grounds for relief: (1) the trial court erred in overruling his *Batson* objection to the prosecutor's peremptory strike of venireperson T.L; and (2) trial counsel was ineffective for failing to object during a portion of the prosecutor's rebuttal closing argument.  (Doc. 1.)

## II.  Facts[2]

Viewing the evidence in the light most favorable to the verdict, the record reveals that just before noon on August 12, 2003, Victim was sitting on his front porch speaking to his neighbor, Debra Williams.  A white car slowly pulled up and stopped in the middle of the street in front of Victim's house.  A man, later identified as Ford, got out of the passenger side of the car and started shooting at Victim and Williams.  The Victim died later that day due to a gunshot wound to his chest.

On the day of the shooting, Shaun Moye was at Williams' house, when he heard gunshots.  He looked out the window towards Victim's house, where he saw Ford standing in front of a white Buick Century, fire multiple shots towards Victim and Williams, and then get back into the passenger side of the car and leave the scene.  Both Moye and Williams spoke to the police on the day of the shooting, and gave them descriptions of the shooter.

No one was charged with the shooting until several years later, when police identified Ford as a suspect.  At that time, a photograph of Ford was shown to Moye and Williams as part of a photographic lineup, and they both identified Ford as the shooter with "absolute" certainty.

A third eyewitness, Terry Diamond, was in Victim's neighborhood on the day of the shooting.  As Diamond turned his car onto Victim's street, Diamond saw a person he knew as "Wild Bill" shooting a gun towards a house, heard two shots, and saw the person get into the passenger side of a white car.  Diamond testified he knew "Wild Bill" because "Wild Bill" had been to his house and rented his car in exchange for money or drugs.  Diamond identified Ford as "Wild Bill" and as the person he saw shooting towards Victim's house.

---

[2]The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals affirming the decision of the motion court.  (Doc. 11-11 at pp. 3-9.)

3

Ford testified in his own defense and presented medical records, claiming he did not commit the shooting and could not have done so due to back injuries he was suffering at the time. The state called two rebuttal witnesses to contradict Ford's description of his inability to walk at the time of the shooting.

### III.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions

4

but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

## IV.  Petitioner's Claims

The undersigned will discuss Ford's two grounds for relief in turn.

### 1.  Ground One

In his first ground for relief, Ford argues that the trial court erred in permitting, over defense counsel's *Batson* objection, the State's peremptory strike of African-American venireperson T.L. On direct appeal, Ford specifically argued that the State's reasons for striking T.L. were pretextual and racially motivated.

Federal law is well settled that the Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise qualified persons from the jury based solely on their race. *Devose v. Norris*, 53 F.3d 201, 204 (8th Cir. 1995). "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89. In *Batson*, the United States Supreme Court held that "in order to establish an equal protection violation, a defendant must first establish a prima facie case of purposeful discrimination in the selection of the jury panel." *Id.* at 96. Indeed, it is the defendant's burden "to prove the existence of purposeful discrimination." *Id.* at 93.

5

*Batson* provides a three-step process to determine the validity of peremptory strikes by the prosecutor: (1) the defendant must make a prima facie showing that the state exercised a peremptory strike because of race; (2) if such a showing is made, the burden shifts to the state to articulate a race-neutral explanation for striking the prospective juror; and (3) the trial court must decide whether the defendant has proven purposeful discrimination. *Id.* at 96-98. "A neutral explanation in this context means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991).

Each of the three steps of a *Batson* inquiry involves a determination of fact, and therefore habeas review turns on whether the state court decision was based upon an unreasonable determination of the facts. *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001). Such review presumes that the state court found the facts correctly, unless the petitioner rebuts that presumption with clear and convincing evidence. *Id.* A federal court's review of the trial court's determination of a *Batson* challenge is particularly deferential:

> We regularly defer to the fact-findings of trial courts because those courts are uniquely positioned to observe the manner and presentation of evidence. Our deference to trial court fact-finding is doubly great in the present circumstance because of the "unique awareness of the totality of the circumstances surrounding voir dire," and because of the statutory restraints on the scope of federal habeas review.

*Id.* (*citing Moore*, 895 F.2d at 486). Even erroneous fact finding on the part of a state court does not justify granting a federal writ of habeas corpus if the court erred "reasonably." *Id.*

Here, the prosecutor offered the following three reasons for its strike of T.L.: (1) T.L. has been visiting a friend convicted of a drug trafficking charge in prison every three to four

6

months since 2003; (2) T.L. is a teacher and works with children; and (3) T.L. was previously arrested in Pine Lawn and stated that the police officer beat him.  (Doc. 11-1 at p. 187.) Defense counsel responded that the prosecutor's reasons were pretextual, because counsel believed that other panel members visited individuals in custody and had been arrested for traffic tickets.  *Id.*   The court asked defense counsel if she knew "anybody else who was beaten in Pine Lawn," to which counsel replied, "No."  *Id.*   The Court found that the State provided a sufficiently race neutral reason to strike T.L., and denied Ford's *Batson* motion.  *Id.*

In his direct appeal, Ford argued that the state's explanations for striking T.L. were pretextual.  The Missouri Court of Appeals rejected Ford's claim.  The Court first found that Ford failed to establish that the State's explanation that Ford visited a friend in prison was pretextual, because Ford did not identify a venireperson of another race who had visited a prison and was not removed from the panel.  Instead, the Court noted that the State "used two preemptory strikes to remove venireperson D.C., a white female who had visited various prisons and inmates in Bolivia, Peru and Mexico and venireperson R.B., also a white female, who had visited a friend in prison."  (Doc. 15-1 at p. 6.)   The State also struck for cause "two white venirepersons who had significant contacts with prisons or jails."  *Id.*

With regard to the State's explanation that Ford worked with children, the Court noted that Ford failed to challenge this reason during the *Batson* hearing.  The Court therefore deemed the reason to be race-neutral unless there was inherent discriminatory intent based on race.  Because there was no inherent discriminatory intent in this case, the Court found that the prospective juror's employment as a teacher was "a valid, race-neutral explanation" for striking the juror.  *Id.* at 7.

Finally, the Court addressed Ford's argument that the prosecution's explanation that the prospective juror's prior arrests and mistreatment by police was pretextual.  The Court noted

that defense counsel failed to identify other venirepersons with prior arrests that were not struck, and conceded that no other venirepersons had been beaten by the Pine Lawn Police. The Court found this reason for striking T.L. was "logically relevant." *Id.* at 7. The Court explained:

> It is uncontested that T.L. had prior arrests and/or convictions for traffic tickets. A prior conviction is an appropriate and neutral basis for a peremptory strike. T.L.'s answers revealed that he believed that he was inappropriately treated by the police. A strike based on a venire member's 'problem' with police is a valid, race-neutral reason.

*Id.* at 7-8 (internal citations omitted). The Court concluded that the trial court "did not clearly err in determining that venireperson T.L.'s prior arrests and his negative experience with police were valid race-neutral reasons for the state's peremptory strike." *Id.* at 8.

This Court finds that the Missouri Court of Appeals' decision upholding the trial court's ruling on Ford's challenge to venireperson T.L. was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. The transcript of the voir dire proceedings shows that the prosecutor provided race-neutral reasons for striking T.L. Following the prosecutor's explanation for striking T.L., the record further reflects that defense counsel failed to show that the prosecutor's proffered explanation was mere pretext for a racially motivated strike. Ford offered nothing to the trial court to support any argument that the prosecutor's strike demonstrated purposeful discrimination. Ford has neither shown that that the prosecutor's reasons were pretexts for a race-based motive, nor has he shown that white venirepersons who were not struck were similar to T.L. in all relevant respects. Thus, this Court finds no error in the trial court's denial of Ford's *Batson* challenge.

Accordingly, Ground One will be denied.

8

**2.    Ground Two**

In his second ground for relief, Ford argues that he received ineffective assistance of counsel when trial counsel failed to object during a portion of the prosecutor's rebuttal closing argument indicating that eyewitness Terry Diamond was afraid to identify Ford as the shooter.

During direct examination, Diamond testified that he was testifying under a subpoena and that he did not want to testify. (Doc. 11-1 at p. 272.) Diamond explained that he feared testifying because he had "a family and kids," and he did not want anything to happen to them. *Id.* He testified that he was serving a sentence in the county jail at the time of trial. *Id.* at 261. On cross examination, defense counsel attacked Diamond's credibility by suggesting he waited until 2009 to identify Ford because he was facing a stealing charge that was later dismissed. *Id.* at 280.

The prosecutor stated as follows, in relevant part, during her rebuttal closing argument:

> Terry Dimond took the stand and he told you he was having a hard time testifying. And it makes sense. That man—and you saw him in his prison uniform—has to go back to the county jail and finish the rest of that sentence that he just started. He is forever going to be labeled a snitch. And we all know how snitches are looked at. He will forever have to deal with the fact that he came in and pointed out this man as a murderer. He will forever have to be afraid for his kids when they're outside playing and thinking something might happen to them. That weighed heavy on his mind and on his heart, and that was obvious when he was testifying.

*Id.* at 423-24.

In order to state a claim of ineffective assistance of trial counsel, a petitioner must meet the *Strickland* standard: Ford must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id*

9

To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

Ford raised this claim in the post-conviction proceedings.  The motion court held an evidentiary hearing, at which trial counsel testified.  Counsel testified that she did not object to the prosecutor's statement because she did not believe it was improper.  (Doc. 11-8 at p. 15-16.)  Specifically, defense counsel stated: "honestly, as a litigator, I don't think I could have kept it out.  So me interrupting for the judge to shut me down, I didn't—that wouldn't—that wouldn't have helped Mr. Ford either." *Id.*

The Missouri Court of Appeals rejected Ford's claim, holding as follows:

> In this case, Movant has failed to meet either prong of the *Strickland* test.  First, Movant has failed to demonstrate Counsel's performance did not conform to the degree of skill and diligence of a reasonably competent attorney.  In light of Counsel's testimony at the evidentiary hearing where she stated she did not object as a matter of trial strategy because she thought an objection would be overruled and such a ruling would hurt Movant, Movant has not overcome the presumption that Counsel's decision not to object was a reasonable trial strategy.  The prosecutor was entitled to argue during her rebuttal closing argument that Diamond was afraid of testifying based upon the evidence of Diamond's reluctance to testify and in order to counteract the negative inference made by Trial Counsel in closing argument indicating Diamond was testifying in order to have his stealing charge dismissed.  Because any objection to the prosecutor's argument would have been non-meritorious, Trial Counsel was not ineffective for failing to object.
> Movant has also failed to demonstrate he was prejudiced by Counsel's allegedly deficient performance.  In addition to Diamond's eyewitness testimony identifying Movant as the shooter, two other eyewitnesses, Williams and Moye, identified Movant as the shooter with 'absolute' certainty.  Furthermore, although Movant testified he did not and could not have committed the shooting against

>Victim due to an alleged medical condition, the jury did not believe Movant's testimony but instead found him guilty of first-degree murder. Based on this other evidence presented at trial, there is not a reasonable probability that the outcome of the proceeding would have been different had Counsel objected to the prosecutor's rebuttal closing argument and the objection would have somehow been sustained.

(Doc. 11-11 at pp. 8-9) (internal citations omitted).

When reviewing a claim of ineffective assistance of counsel premised on a failure to object to the prosecutor's closing argument, the question is whether the prosecutor's comments were so improper that counsel's only defensible choice was to interrupt them with objection. *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994). "Whether to object during opposing counsel's summation to the jury is a matter of trial strategy[.]" *Dansby v. Hobbes*, 766 F.3d 809, 836 (8th Cir. 2014). Ordinarily, strategic decisions are "virtually unchallengeable unless they are based on deficient investigation." *Id.*; see also *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006).

The decision of the Missouri Court of Appeals neither incorrectly nor unreasonably applied clearly established federal law. Trial counsel's decision not to object to the prosecutor's comments was not deficient or prejudicial. The prosecutor was entitled to argue that Diamond was afraid of testifying based upon the evidence presented of his reluctance to testify, and in order to counteract the negative inference made by defense counsel that Diamond was testifying in order to have a pending charge dismissed. Because the prosecutor's comments were not improper, it was not deficient for counsel not to object. Additionally, counsel testified at the evidentiary hearing that she did not object to the prosecutor's comments because she believed the comments were proper and she believed making a meritless objection would be harmful to Ford. Trial counsel, therefore, made a strategic decision not to object.

11

Further, trial counsel's decision not to object did not prejudice Ford in light of the fact three eyewitnesses testified that Ford was the shooter.

Accordingly, Ground Two will be denied.

### V.    Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).   In this case, Ford has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

### ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

*s/Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of August, 2021.